J-A27021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GABINO BERNAL, | : | |
| | : | |
| Appellant | : | No. 1922 WDA 2013 |

Appeal from the Judgment of Sentence Entered November 19, 2013,
In the Court of Common Pleas of Allegheny County,
Criminal Division, at No. CP-02-CR-0002976-2013.

BEFORE: SHOGAN, OLSON and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED DECEMBER 08, 2014**

Appellant, Gabino Bernal, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County. For the reasons that follow, we vacate and remand for resentencing.

The trial court summarized the procedural and factual history of this case as follows:

[Appellant] was charged with Rape of a Child,[1] Unlawful Contact with a Minor,[2] Indecent Assault of a Person Under 13[3] and Corruption of Minors[4] in relation to a series of incidents with his girlfriend's 8-year-old daughter. Following a jury trial, [Appellant] was found not guilty of Rape of a Child and guilty at the remaining charges. On November 19, 2013, [Appellant] appeared before this Court and was sentenced to a term of imprisonment of nine (9) to eighteen (18) years at the Unlawful

Contact with a Minor charge. No Post-Sentence Motions were filed. This appeal followed.[1]

> [1] 18 Pa.C.S.A. §3121(c)
>
> [2] 18 Pa.C.S.A. §6318[(a)(1)]
>
> [3] 18 Pa.C.S.A. §3126(a)(7)
>
> [4] 18 Pa.C.S.A. §6301(a)(1)[(i)]

> Briefly, the evidence presented established that in the fall of 2003, [Appellant] lived with his girlfriend [E. C.], her eight (8) year old daughter, [("the Victim")] and her 11 year old son, [J.], who has cerebral palsy and is confined to a wheelchair. It was customary for [Appellant] to pick up [the Victim] from school and walk her home when her mother was not able to do so. Sometime that fall, [the Victim] got in trouble at school, and her teacher told [Appellant] when he arrived to pick her up. [Appellant] became angry and pulled [the Victim's] hair during the walk home. Upon arriving at their house, [Appellant] took [the Victim] to the bedroom he shared with her mother, forcibly undressed her and raped her. [The Victim] testified that the rapes occurred numerous times over the course of the next several months. [Appellant] threatened to hurt [the Victim's brother], with whom [the Victim] was very close, if she told anyone.

Trial Court Opinion, 4/3/14, at 1-2.

Appellant presents the following issues for our review:

> 1. Did the trial judge abuse her discretion by permitting Mary Carrasco, M.D. to testify as a Commonwealth rebuttal witness when her testimony did not constitute rebuttal?
>
> 2. Did the trial judge abuse her discretion by permitting the Commonwealth to cross-examine all character witnesses as to whether they were aware that [Appellant] was an illegal alien

---

[1] Both Appellant and the trial court complied with the dictates of Pa.R.A.P. 1925.

-2-

without limiting the ruling as to whether the character witnesses should testify that [Appellant] was law-abiding?

     3.    Did the trial judge commit an error of law sentencing [Appellant] at Count 2 to nine to eighteen years in prison when at that count he was only convicted of a felony of the third degree, and not a felony of the first degree?

Appellant's Brief at 2-3.

Appellant first argues that the trial court abused its discretion in permitting Mary Carrasco, M.D., to testify as a Commonwealth rebuttal witness because, as Appellant contends, her testimony did not constitute rebuttal. Appellant's Brief at 13. Appellant maintains that Appellant's expert witness, Dr. Breck, was precluded from answering questions, due to sustained objections, and thus, there was no testimony provided by Dr. Breck that Dr. Carrasco could rebut. *Id.* at 14-15. Appellant further contends that because Dr. Breck responded that she had no knowledge regarding a statistic related to child assault victims not showing signs of being sexually assaulted, subsequent testimony from Dr. Carrasco regarding the statistic was not rebuttal testimony. *Id.* at 15, 20.

We have stated the following when reviewing a trial court's evidentiary ruling:

     The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013).

Furthermore, in addressing the admissibility of rebuttal evidence, our Supreme Court has stated the following:

[T]he admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. [W]here the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter of right. Rebuttal is proper where facts discrediting the proponent's witnesses have been offered.

***Commonwealth v. Ballard***, 80 A.3d 380, 401-402 (Pa. 2013).

Despite Appellant's claims that Dr. Breck's testimony was limited in various ways, the record established that Dr. Breck indeed provided testimony regarding her conclusions as to whether the Victim had been subjected to sexual abuse. Specifically, Dr. Breck testified that during her examination of the Victim on December 1, 2003, she found no abnormalities and stated that the Victim's vagina and hymen were normal. N.T., 8/27/13, at 101-102. Dr. Breck also stated that following her examination of the Victim on December 29, 2003, she had again concluded that the Victim's pubic area was "normal." ***Id.*** at 102-103.

On cross-examination, Dr. Breck's testimony reflected that the December 1, 2003, examination was for a urinary tract infection. N.T., 8/27/13, at 104. After acknowledging that having sex can be a cause of a

urinary tract infection, Dr. Breck was asked by the Assistant District Attorney whether it was possible that the Victim's infection was the result of having had sexual intercourse. *Id.* at 104-105. Dr. Breck answered: "My examination does not show any signs of her having penetration sex." *Id.* at 105. Dr. Breck conceded that she had not used a colposcope, an instrument often used in sexual assault cases to examine the vagina, when she conducted her examination of the Victim in this matter. *Id.* at 105-106. When questioned regarding a statistic that indicated that ninety-five percent of female children known to have been sexually assaulted do not exhibit any physical signs of such an assault, Dr. Breck stated that she could not answer because "I don't have that knowledge." *Id.* at 106. On redirect, however, when presented with the same statistic, Dr. Breck stated: "It's hard for me to believe." *Id.* at 107.

In rebuttal, Dr. Carrasco testified as an expert in the area of child abuse, and explained that according to the most widely used study on the subject, only five percent of children referred for a sexual-abuse evaluation exhibited any physical evidence of such abuse. N.T., 8/28/13, at 139-140. Dr. Carrasco further explained that, in her twenty-five years of experience examining children for signs of sexual abuse, she used a colposcope "as a magnifying device to record the appearance of the hymen in case there's a need to look at the evidence instead of simply examining the child, we would

be able to see it." *Id.* at 136-138, 141. Dr. Carrasco explained that while "it's not impossible to [examine the hymen] visually, it's much better with a [colposcope] because you can see a much greater level of detail of sexual abuse." *Id.* at 142.

As is reflected above, Dr. Breck, in fact, provided testimony regarding her opinion as to whether the Victim was subject to sexual abuse by testifying that the Victim's vagina and hymen appeared "normal" and that there was no evidence of penetration sex. Furthermore, Dr. Breck stated that it was "hard for her to believe" the statistic establishing that children who were subjected to sexual abuse may not show signs of such abuse.

Accordingly, Dr. Carrasco's testimony was appropriately admitted for purposes of rebutting Dr. Breck's. Dr. Carrasco's testimony suggested that Dr. Breck's examinations were not as thorough as necessary due to her failure to use the proper instrument for examination and that a "normal" vagina and hymen did not necessarily mean that the Victim had not experienced vaginal penetration or that the Victim had not been subjected to sexual abuse. Additionally, Dr. Carrasco's testimony regarding the statistic of known child victims of sexual abuse not reflecting signs of that abuse served to rebut Dr. Breck's opinion that such a statistic was "hard for her to believe." Accordingly, the trial court did not abuse its discretion in allowing the rebuttal testimony of Dr. Carassco. Appellant's first claim lacks merit.

Appellant next contends that "the trial judge abused her discretion by permitting the Commonwealth to cross-examine all character witnesses as to whether they were aware that [Appellant] was an illegal alien without limiting the ruling as to whether the character witnesses should testify that [Appellant] was law-abiding." Appellant's Brief at 20. Appellant filed a motion *in limine*, stating that Appellant was an undocumented alien and requesting that the trial court enter an order prohibiting the Commonwealth from introducing this fact to the jury. *Id.* at 20-21. After jury selection, Appellant asserts, the parties met in chambers and discussed the motion *in limine*. *Id.* at 21. Appellant contends that although the meeting was not placed on the record and a written order was never entered, the trial court ruled "in blanket fashion" that the Commonwealth could, in fact, cross-examine defense character witnesses as to whether they were aware that Appellant was an illegal alien. *Id.* at 22. Appellant further maintains that the ruling was not limited to whether the character witnesses testified that Appellant was law-abiding. *Id.* Appellant now argues that it was error for the trial court to issue a blanket order that any character witness could be cross-examined by the Commonwealth regarding Appellant's status as an undocumented alien. *Id.* at 25. Appellant relies on **Commonwealth v. Kouma**, 53 A.3d 760 (Pa. Super. 2012), for the proposition that cross-

examination is permitted in Pennsylvania only when the character witness testifies as to a defendant's "reputation for being law-abiding." *Id.* at 26.

The Commonwealth contends that Appellant never requested that the trial court judge limit the Commonwealth's references to Appellant's illegal immigrant status to those instances in which a character witness had already testified to Appellant's reputation for law-abidingness. Commonwealth's Brief at 15. Because Appellant failed to make this request to the trial court, the Commonwealth argues the claim is waived. *Id.* at 15-16. The Commonwealth further asserts that even if the claim is not waived, the trial court did not abuse its discretion in permitting the prosecutor to question the witnesses regarding Appellant's illegal alien status. *Id.* at 20.

"It is a settled principle of appellate review, of course, that courts should not reach claims that were not raised below." *Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010). Pennsylvania Appellate Rule 302 provides as follows:

> **Rule 302.  Requisites for Reviewable Issue**
>
> **(a) General rule.**  Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.
>
> **(b) Charge to jury.**  A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.

Pa.R.A.P. 302.  Additionally, the note to Pa.R.A.P. 302 states:

-8-

> *Note*: This rule sets forth a frequently overlooked requirement. ***See, e.g., Commonwealth v. Piper***, 458 Pa. 307, 328 A.2d 845 (1974), as to Subdivision (a). ***See, e.g., Dilliplaine v. Lehigh Valley Trust Co.***, 457 Pa. 255, 322 A.2d 114 (1974); ***Commonwealth v. Light***, 458 Pa. 328, 326 A.2d 288 (1974) as to Subdivision (b). Rule 2117(c) (statement of place of raising or preservation of issues) and Rule 2119(e) (statement of place of raising or preservation of issues) require that the brief expressly set forth in both the statement of the case and in the argument reference to the place in the record where the issue presented for decision on appeal has been raised or preserved below.

Pa.R.A.P. 302, Note.

Nothing in the record reflects the trial court's ruling on Appellant's motion *in limine* prior to trial. This fact is consistent with Appellant's assertion that an unrecorded, in-chambers meeting between parties took place, during which the trial court ruled that if the defense called character witnesses, the Commonwealth would be able to cross-examine them as to whether they were aware that Appellant was an illegal alien. A review of the record does reflect, however, the following exchange between counsel and the trial court, during trial, regarding cross-examination of witnesses related to Appellant's illegal alien status:

[Commonwealth]:     So you are in this country legally?

[Appellant]:     No.

[Appellant's Counsel]: You are a citizen of the United States?

[Appellant]:     No, I'm sorry, no.

[Appellant's counsel]:   May we approach, Your Honor?

- - -

(A discussion at sidebar was held as follows:)

- - -

[Appellant's counsel]:   Two things.  First, I filed a motion that none of that could be brought into this case and [the Commonwealth] agreed with that motion but the Court didn't get to rule on it, that's Number One.

Number Two, the Court did not rule that if I presented character testimony that the character witness was aware that [Appellant] was here illegally, if that question could be asked, that was fair game in cross examination.  This is improper cross examination.

The Court: I thought you weren't calling character witnesses.  I also don't think it makes any difference.

[Appellant's counsel]: Your Honor, there's a couple of things.  First of all, I might change my mind about calling character witnesses.  In this case, cross examination is not permitted, it's improper.  Number Two, there's a time and place for everything and the time and place for that type of cross examination is only as to whether or not they knew about it.

The Court:  Well, the credibility of [Appellant] was in taking the stand.

[Appellant's counsel]:   But I don't see how it could be used.

The Court:  That he was a Mexican national.

[Appellant's counsel]:   And I said that.

[Commonwealth]:       I was picking up his direct.  He was asking the question if he was in the country legally and he said he came in through Arizona.

The Court:  I agree with [Appellant's Counsel] that it never came up.  My suggestion would be to move on at this point.  If you call character witnesses, then [the Commonwealth] can cross examine them on whether [Appellant] is here illegally.  If not, I will initiate a cautionary instruction to the jury.

[Appellant's Counsel]:  If I might point out something.  I did ask him and he did say he entered illegally.

The Court:  He has a right to cross examine him.

[Appellant's Counsel]:  It is not evidence of bad character, it is not evidence of crimen falsi, it is not evidence of impeachment.

The Court:  Well, you did open the door and I believe [the Commonwealth] has indicated you did, but I will allow you to continue.

[Commonwealth]:  Thank you, Your Honor.

- - -

(Discussion at sidebar was concluded)

- - -

The Court:  Objection overruled.

N.T., 8/27/13, at 116-118.

Even after the trial court ruled that the Commonwealth could cross-examine character witnesses regarding their knowledge of Appellant's illegal-alien status, Appellant's counsel did not request that cross-examination be limited and permissible only after the witness testified to Appellant having a reputation for being law-abiding.  Furthermore, Appellant

has failed to identify where in the record he requested that the trial court limit any cross-examination as to his illegal-alien status to be in response to a character witness's testimony that Appellant was law-abiding. Thus, we are constrained to agree with the Commonwealth that Appellant has failed to preserve this issue for appellate review.

We further note that, contrary to Appellant's assertions, *Kouma* does not pronounce a blanket holding that character witnesses can be questioned regarding an appellant's illegal alien status only when an appellant's law-abidingness is raised. In *Kouma*, the appellant's specific contention was that "the trial court erred in ruling that, if [a]ppellant called character witnesses to testify as to his reputation for being law-abiding, the prosecutor could cross-examine the witnesses as to their knowledge of Appellant's immigration status as an illegal alien." *Kouma*, 53 A.3d 760, 768. Accordingly, this Court was required to determine whether appellant's immigration status as an illegal alien, subject to deportation, was probative as it related to his trait of being law-abiding. *Id.* at 769. After conducting its analysis, this Court concluded that the Commonwealth was permitted to use the appellant's immigration status as an illegal alien to call into question the character witnesses' qualifications to speak for the community on the issue, *i.e.*, their basis of knowledge of the person or law-abiding trait and the standard by which they measure reputation. *Id.* at 770. As such, the

Court's ruling in **Kouma** was specific to the facts in the case before it and does not stand for the proposition, as stated by Appellant, that a defendant's status as an illegal alien can be referenced during the cross-examination of a character witness **only** when that witness had testified to the defendant's reputation for law-abidingness. Thus, Appellant's second claim lacks merit.

In his final issue, Appellant maintains that because he was not convicted of a felony of the first degree, the trial court erred in sentencing him to nine to eighteen years in prison. Appellant's Brief at 28. Appellant relies on **Commonwealth v. Reed**, 9 A.3d 1138 (Pa. 2010), in support of his position. **Id.** at 31-32. Appellant asserts that because the trial court committed an error of law, the case should be remanded for resentencing. **Id.** at 34.

The Commonwealth agrees with Appellant's claim that he was improperly sentenced. Commonwealth's Brief at 23-25. The Commonwealth also relies on **Reed** in its analysis. **Id.** at 24-25. The Commonwealth concedes that it was error for the trial court to have graded the unlawful-contact-with-a-minor conviction as anything greater than a felony of the third degree. **Id.** at 25. As such, the Commonwealth asserts that resentencing is necessary. **Id.**

We first note that the statutory provision defining the offense and establishing grading provides, in relevant part, as follows:

## § 6318.  Unlawful contact with minor

**(a) Offense defined.**--A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

> (2) Open lewdness as defined in section 5901 (relating to open lewdness).

> (3) Prostitution as defined in section 5902 (relating to prostitution and related offenses).

> (4) Obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).

> (5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

> (6) Sexual exploitation of children as defined in section 6320 (relating to sexual exploitation of children).

**(b) Grading.**--A violation of subsection (a) is:

> (1) an offense of the same grade and degree as the most serious underlying offense in subsection (a) for which the defendant contacted the minor; or

> (2) a felony of the third degree;

whichever is greater.

18 Pa.C.S. § 6318 (a) & (b).

Additionally, in **Reed**, our Supreme Court was confronted with a factual scenario similar to the one presented herein. In **Reed**, the defendant was charged with attempted unlawful contact with a minor and criminal attempt of the following crimes: rape of a child and involuntary deviate sexual intercourse ("IDSI"), which are first-degree felony offenses, statutory sexual assault, a second-degree felony, indecent assault, a second-degree misdemeanor, and corruption of a minor, a first-degree misdemeanor. **Reed**, 9 A.3d at 1141. The defendant was acquitted of all charges except criminal attempt to commit unlawful contact with a minor. **Id.** At sentencing, the trial court graded defendant's conviction for attempted unlawful contact with a minor as a first-degree felony based on the fact that defendant also was charged with the first-degree felony offenses of rape and IDSI, determining that the grading scheme was not contingent upon an actual conviction of those underlying offenses. **Id.** at 1141-1142. This Court, after concluding that the trial court erred in grading defendant's offense as a first-degree felony and ruling that grading under 18 Pa.C.S. § 6318(b)(1) depended "upon whether [defendant] was actually convicted of the underlying offenses," vacated the judgment of sentence and remanded the matter for resentencing. **Id.** at 1142, 1144. Our Supreme Court granted the Commonwealth's petition for allowance of appeal for the purpose of deciding the following issue:

What is the proper grading of a conviction under 18 Pa.C.S. § 6318, where the trial court at sentencing concluded that the most serious underlying offenses for which the defendant contacted the minor were offenses for which the defendant was acquitted?

*Id.* at 1142.

The Court explained that pursuant to the express statutory language, a violation of 18 Pa.C.S. § 6318(a), unlawful contact with a minor, is graded as either the most serious underlying offense for which the defendant attempted contact with the minor, or a first-degree misdemeanor, the default grading under section 6318(b)(2), whichever is greater.[2] ***Reed***, 9 A.3d at 1146-1147. The Court stated that because a fact-finder acquitted the defendant of the other charges, those acquittals cannot be ignored when applying the appropriate grading under subsection 6318(b). *Id.* at 1147. Thus, the Court concluded that because the defendant had been acquitted of the separate Chapter 31 charges, the default sentencing provision applied. *Id.* at 1148.

In the case *sub judice*, as noted, Appellant was convicted of indecent assault of a person under thirteen and corruption of minors in addition to his conviction for unlawful contact with a minor. Appellant was acquitted of rape. The convictions of indecent assault and corruption of minors are

---

[2] At the time, section 6318(b)(2) provided that the default grading for the offense was a misdemeanor of the first degree. 18 Pa.C.S. § 6318 (1997); ***Commonwealth v. Miller***, 35 A.3d 1206, 1211 (Pa. 2012).

graded as misdemeanors of the first degree. Because the default grading provision of section 6318(b)(2), a felony of the third degree, is greater than the two other convictions for misdemeanors of the first degree, Appellant's conviction of unlawful contact with a minor must be graded as a felony of the third degree. 18 Pa.C.S. § 6318(b)(2); **Reed**, 9 A.3d at 1148.

Sentencing for a felony of the third degree "shall be fixed by the court at not more than seven years." 18 Pa.C.S. § 1103(3). Appellant was sentenced to incarceration for nine to eighteen years. As such, the trial court erred in sentencing Appellant. Thus, we are constrained to vacate Appellant's sentence and remand the matter for resentencing.

Vacate sentence and remand for resentencing on all counts. **See Commonwealth v. Stemple**, 940 A.2d 504, 513 (Pa. Super. 2008) (holding that where vacating the sentence reduces the aggregate penalty and upsets the overall sentencing scheme, "the appropriate step is to vacate the entire sentence and to remand for resentencing.") Jurisdiction relinquished.

Judge Musmanno joins this Memorandum.

Judge Olson Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014