J-S17010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID VENSON | : | |
| | : | |
| Appellant | : | No. 494 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 15, 2019
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002426-2017

BEFORE: PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:           **FILED MAY 22, 2020**

David Venson appeals from the judgment of sentence entered in the Lackawanna County Court of Common Pleas on January 15, 2019. After careful review, we affirm.

On August 14, 2014, Venson, a minor ("the victim"), and an uncharged co-defendant, J.F., had a sexual encounter in a parked car. That same day, the victim reported to police that Venson sexually assaulted her. On September 9, 2015, a criminal complaint was filed against Venson, charging him with several sexual offenses. At that time, Venson's whereabouts were unknown and a warrant was issued for his arrest.

On September 14, 2016, Venson was apprehended in New York State. He refused to waive extradition and was released after ninety days because the Governor's warrant was not yet signed. On September 25, 2017, he was

apprehended a second time in New York State. This time, he waived extradition and was returned to Pennsylvania. He subsequently waived his right to a preliminary hearing and all charges were bound over for court.

On September 21, 2018, a jury convicted Venson of one count each of statutory sexual assault: 11 years or older, involuntary deviate sexual intercourse with a person less than 16 years old, unlawful contact with a minor, aggravated indecent assault of a complainant less than 16 years old, corruption of minors - defendant age 18 or above, corruption of minors, and one count of indecent assault - person less than 16 years old.

On January 15, 2019, the trial court sentenced Venson to an aggregate term of one hundred and ninety-two to three hundred and ninety-four months' imprisonment. Venson filed timely *pro se* post–sentence motions. While those motions were under review, Venson filed a *pro se* notice of appeal to this Court. About a month later, Venson filed a *pro se* motion to appoint counsel. Shortly thereafter, the court allowed counsel of record to withdraw and appointed Attorney Carl Poveromo.

Before we address Venson's substantive claims on appeal, we must address the irregularities of Venson's status after sentencing. Venson was represented by counsel up until sentencing. Seven days after sentencing, Venson filed a *pro se* post-sentence motion on January 15, 2019. Venson then filed a *pro se* notice of appeal on March 21, 2019. Normally, his *pro se* filings

should have been forwarded to counsel of record. ***See Commonwealth v. Jette***, 23 A.3d 1032, 1044 (Pa. 2011).

However, it is clear from the record that all parties, including Venson, understood that he was proceeding *pro se* after sentencing. ***See*** N.T., Sentencing, 1/15/19, at 33. Venson does not challenge his *pro se* status during this period, or the procedure by which he became *pro se*. Under these circumstances, we do not conclude that Venson was engaged in a form of hybrid representation after sentencing. He was without counsel from the time of sentencing to the time the court appointed appellate counsel. Accordingly, we turn to reach the merits of Venson's issues.

First, Venson contends the trial court abused its discretion by denying his petition for dismissal of charges on Pa.R.Crim.P. 600 speedy trial grounds. Specifically, he argues the Commonwealth did not act with due diligence in locating and arresting him after the criminal complaint was filed, in extraditing him from New York after learning of his whereabouts, and in bringing him to trial once he was apprehended and returned to Pennsylvania.

Our scope and standard of review on this issue are as follows.

Our standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party.

***Commonwealth v. Robbins***, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted).

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

***Commonwealth v. Hunt***, 858 A.2d 1234, 1239 (Pa. Super. 2004) (en banc)

(citation omitted; brackets in original).

Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable time and excusable delay. "Excludable time" is classified as periods of delay caused by the defendant. "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." Due diligence includes, inter alia, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

***Commonwealth v. Moore***, 214 A.3d 244, 248-249 (Pa. Super. 2019)

(citations omitted).

"Once a violation of Rule 600 has been established ... the inquiry becomes whether the Commonwealth exercised due diligence in bringing [a

defendant] to trial and if the circumstances occasioning the postponement were beyond the control of the Commonwealth." ***Commonwealth v. Kearse***, 890 A.2d 388, 392 (Pa. Super. 2005). "The Commonwealth … has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." ***Commonwealth v. Cole***, 167 A.3d 49, 71 (Pa. Super. 2017) (citation and quotation marks omitted).

Venson contends that the Commonwealth did not make a sustained and consistent effort to locate and arrest him during the three-hundred and seventy-one days between when the complaint was filed and when he was apprehended in New York. His contention is belied by the record.

Corporal Patrick McGurrin of the Pennsylvania State Police testified that on September 9, 2015, he filed a criminal complaint against Venson charging him with the above listed charges and a warrant was issued for his arrest. ***See*** N.T., Rule 600 Hearing, 9/4/2018, at 13-14. On the same day, Corporal McGurrin attempted to serve Venson with the arrest warrant but found Venson was not residing at a Scranton address that had been provided. ***See id***. at 17-18.

Corporal McGurrin then tried to locate Venson in Kingston, Pennsylvania where he was informed Venson had been spotted, but was unable to locate him. ***See id***., at 18. The Pennsylvania State Police then issued a Public Information Release Report in order to assist with Venson's apprehension. ***See id***. at 23-24. Over the course of the next month, Corporal McGurrin submitted

Venson's picture and information about the charges against him to the Pennsylvania Crime Intelligence Center for dissemination to law enforcement authorities and to Pennsylvania Crime Stoppers to obtain assistance in locating Venson. *See id*. at 19-22.

In November of 2015, Corporal McGurrin completed a report in which he indicated that Venson was still at large, that he had advised the Pennsylvania State Police Fugitive Unit of the outstanding arrest warrant, he had notified PA Crime Stoppers again, and he had performed a JNET search through the Department of Labor. *See id*. at 32-33. He ascertained from JNET that Venson was associated with a hair salon in Indiana, Pennsylvania. Corporal McGurrin made contact with the owner of the salon, who claimed he did not know Venson. *See id*. at 33.

In February of 2016, Corporal McGurrin again provided information to the Pennsylvania State Police Fugitive Unit. *See id*., at 22. In May of 2016, Corporal McGurrin interviewed Venson's brother, but was not able to obtain any information regarding Venson's whereabouts. *See id*. at 25-26. In July of 2016, Corporal McGurrin completed a supplemental report detailing additional efforts to locate Venson. *See id*. at 34. The report reflected he had contacted the victims/witnesses in the investigation but they had no further information to provide. *See id*. He also requested PA Crimestoppers re-release Venson's information. *See id*. Finally, on September 14, 2016, Corporal McGurrin was advised by the NYPD that Venson had been apprehended. *See id*., at 35.

The evidence of record regarding the efforts made by Corporal McGurrin was sufficient to demonstrate due diligence by the Commonwealth between the time the complaint was filed and when Venson was apprehended in New York.

Venson further contends the Commonwealth did not act with due diligence in extraditing him from New York. Specifically, he argues the Commonwealth did not exercise due diligence in the ninety days between his initial arrest in New York and subsequent release from custody, and then in the two hundred and eighty nine days between his release from custody and his re-arrest. Again, his contention is belied by the record.

Corporal McGurrin testified that the day after he was advised Venson had been apprehended, New York authorities advised that Venson was refusing extradition and Pennsylvania authorities would have to secure a Governor's Warrant. *See id*., at 36. Corporal McGurrin released that information to the Lackawanna County District Attorney's Office and followed their progress in securing a Governor's Warrant through emails with Barry Moran. *See id*., at 36, 81-82, 83.

On October 24, 2016, Moran emailed Corporal McGurrin indicating that he was working on the Governor's Warrant Application and inquired as to whether Corporal McGurrin would be the one picking Venson up. A few days later, the application was forwarded from the District Attorney's Office to the Director of Extraditions and Capital Case Management of the Pennsylvania

Governor's Office of General Counsel. After some back and forth for required changes and corrections, on December 8, 2016, the District Attorney's Office returned the corrected and finalized paperwork to the Director of Extraditions.

On December 12, 2016, the Pennsylvania Governor's Office sent the finalized extradition paperwork to the New York Governor's Office. On the same date, New York authorities advised that Venson was released because the Governor's Warrant had not been received. *See id*. at 37. The New York judge directed Venson's attorney to produce him back in court on January 5, 2017 because New York and Pennsylvania officials were working on a Governor's Warrant and Venson's attorney agreed. *See id*. On December 27, 2016, Moran advised Corporal McGurrin about Venson's release and the court date. On December 29, 2016, the State of New York issued a Governor's Warrant for Venson's arrest.

On January 5, 2017, Venson failed to appear before the New York judge. *See id*., at 37. Moran advised Corporal McGurrin that Venson had failed to appear for the scheduled court date, that the court issued a bench warrant, that the New York Police Department was advised, and that the court docket was left open and not dismissed. In February of 2017, PA Crime Stoppers database indicated that Venson remained a fugitive.

In August of 2017, Corporal McGurrin completed a supplemental report which indicated that Venson remained at large and had been placed on the Pennsylvania State Police Ten Most Wanted list. *See id*., at 38. The case

remained in Crime Stoppers and NCIC and the investigation was continuing. *See id*. That same month Corporal McGurrin enlisted the assistance of the United States Marshall's Fugitive Task Force. On September 25, 2017, Venson was apprehended in New York and waived extradition. *See id*., at 78.

It is clear from the record that the Commonwealth presented sufficient evidence of due diligence in extraditing Venson from New York. We note especially that the time from January 5, 2017 to September 25, 2017 is clearly excluded from Rule 600 calculations as Venson chose not to report to the New York court when directed to do so.

Venson finally claims the Commonwealth did not exercise due diligence during the three hundred and twenty seven days between the time he was returned to Pennsylvania and the Rule 600 Hearing.

Venson was arraigned in Lackawanna County on October 3, 2017 and a preliminary hearing was scheduled for October 11, 2017. The Commonwealth continued the hearing to October 25, 2017, at which time Venson waived his right to a preliminary hearing. *See id*.

On December 1, 2017, a pretrial conference was held, at which time the court issued a scheduling order for trial. The order required the Commonwealth to provide discovery to the defense by December 15, 2017. The Commonwealth provided the discovery seven days late. On December 29, 2017, Venson filed a motion for extension of time to file pretrial motions. On January 3, 2018, the court granted the motion, indicating in the order that all

additional time generated by the defense request shall run against Venson for Rule 600 purposes.

On January 5, 2018, defense counsel filed a motion to withdraw as counsel. After a hearing, the court granted the motion on January 23, 2018, and appointed new counsel. On February 27, 2018, the court held another pretrial conference with new counsel.

On April 4, 2018, Venson filed a counseled omnibus pretrial motion. On April 26, 2018, he filed a brief in support of the motion. On that same date, counsel filed a motion to withdraw as counsel. The court granted the motion and appointed new counsel. On May 7, 2018, a pretrial conference was held with the newly appointed counsel. On June 5, 2018, counsel filed a motion for discovery and request for bill of particulars. Another pretrial conference was held on June 7, 2018.

On June 26, 2018, Venson filed a counseled petition for nominal bail under Rule 600 and a brief in support of the motion. On July 19, 2018, the court issued an order granting the motion to set nominal bail. On July 20, 2018 and August 2, 2018, additional pretrial conferences were held. On August 3, 2018, the court issued an order modifying bail.

On August 7, 2018, the defense filed a motion for the appointment of an investigator. On August 22, 2018, Venson filed an amended counseled omnibus pretrial motion. On August 24, 2018, Venson filed a motion to dismiss pursuant to Rule 600 and a brief in support of the motion. The Commonwealth

filed an answer to the motion and accompanying brief on August 31, 2018. The Rule 600 Hearing was held on September 4, 2018.

After considering the testimony and evidence presented, the trial court concluded that the Commonwealth satisfied its burden of proof that it demonstrated due diligence and that there was no Rule 600 violation. ***See*** Trial Court Opinion, at 11. We find no abuse of discretion in the trial court's finding given the evidence presented at the hearing. Venson's first issue is therefore without merit.

Next, Venson contends the Commonwealth failed to disprove his mistake of age defense. Section 3102 of the Pennsylvania Crimes Code provides the following regarding the mistake of age defense:

> Except as otherwise provided, whenever in this chapter the criminality of conduct depends on a child being below the age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older. When criminality depends on the child's being below a critical age older than 14 years, it is a defense for the defendant to prove by a preponderance of the evidence that he or she reasonably believed the child to be above the critical age.

18 Pa.C.S.A. § 3102. In interpreting this Section, this Court has stated the following:

> [The] [a]ppellant's argument that the Commonwealth, in the first instance, was required to prove as an element of the crime that [the] [a]ppellant knew or believed that [the victim] was [a certain age] is without legal support. In matters involving sexual offenses against children, when criminality depends on the child's being below a specified age but older than fourteen years, it is a defense for the defendant to prove that he or she reasonably believed the child to be above the critical age. Because Section 3102 places the initial burden on the accused to prove mistake of age, absent such

- 11 -

a defense being proffered by the defendant, the Commonwealth bears no burden of proof regarding the defendant's knowledge of or belief as to the age of the child victim.

*Commonwealth v. Bohonyi*, 900 A.2d 877, 884 (Pa. Super. 2006) (emphasis in original) (citation omitted). Based on the aforementioned, Venson was permitted to present a mistake of age defense, and once proffered, the burden shifted to the Commonwealth to disprove the defense. *See id*.

Venson points solely to evidence introduced by the Commonwealth concerning his personal belief as to the victim's age, namely State Trooper Sandy Vanluvender's testimony. Vanluvender testified that during an interview with Venson, Venson indicated that he believed the victim was over eighteen, that he would never have intercourse with a juvenile female because he knew it was a serious charge, and that he asked the victim and J.F. if the victim was eighteen and they both said yes. *See* N.T, 9/21/2018, at 7-8.

To rebut this testimony, J.F.'s mother testified that she had informed Venson prior to the date in question that the victim was fifteen years old. *See id.* at 202-203[1]. Further, a photograph of the victim was admitted into

_____

[1] [J.F.'s mother]: I told him she was 15 years old and I pretty much flipped out because he was hanging out with her because of her age …

[Commonwealth]: Was that conversation prior to August 14, 2014?

[J.F.'s mother]: Yes.

evidence, which showed what the victim looked like around the time of the incident. *See id*. at 78. Finally, the victim testified that on the night in question she was wearing her middle school cheerleading sweatshirt, and the Commonwealth admitted the same into evidence. *See id*. at 81-82. In its opinion, the trial court credited the testimony of J.F.'s mother and other evidence submitted by the Commonwealth, and concluded that Venson could not have reasonably believed that the victim was eighteen or older.

Likewise, the jury, sitting as finder of fact, was free to credit the Commonwealth's evidence. As the jury was properly instructed on the mistake of age defense, and nevertheless found Venson guilty of the crimes charged, we are bound by the fact finder's credibility determinations. Therefore, Venson's second issue is without merit.

Next, Venson claims the trial court imposed an illegal sentence because his conviction of unlawful contact with a minor should have merged with his convictions for statutory sexual assault and involuntary deviate sexual intercourse. He claims merger was proper here because the offenses share

_____

…

[Commonwealth]: When you told him that -- when you told the defendant that, did he appear to understand you? Did he understand what you were saying?

[J.F.'s mother]: Yes.

the same elements and that the same acts served as the basis for the convictions.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law." ***Commonwealth v. Orie***, 88 A.3d 983, 1020 (Pa. Super. 2014). Accordingly, our standard of review is de novo and our scope of review is plenary. ***See Commonwealth v. Brougher***, 978 A.2d 373, 377 (Pa. Super. 2009).

The Sentencing Code provides as follows.

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied" (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." ***Commonwealth v. Raven***, 97 A.3d 1244, 1249 (Pa. Super. 2014) (citation omitted).

The crime of unlawful contact with a minor is defined, in relevant part, as follows:

> (a) Offense defined.—A person commits an offense if he is intentionally in contact with a minor for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

- 14 -

18 Pa.C.S.A. § 6318(a)(1). Furthermore, a minor is "[a]n individual under 18 years of age," and "Contacts" is defined as follows:

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c). As such, the elements of this crime focus on the act of intentionally, either directly or indirectly, contacting or communicating with a minor for the purpose of engaging in statutory sexual assault and involuntary deviate sexual intercourse. Notably, this crime does not require the further criminal conduct to be consummated; it is the communication with the intent to consummate the further crimes that forms the basis of criminal liability. *See Commonwealth v. Reed*, 9 A.3d 1138, 1146 (Pa. 2010).

Involuntary deviate sexual intercourse is defined, in pertinent part, as engaging in deviate sexual intercourse with a complainant who is less than 16 years of age. 18 Pa.C.S.A. § 3123(a)(7). "The crime of involuntary deviate sexual intercourse occurs when the actor, by physical compulsion or threats thereof, coerces the victim to engage in acts of anal and/or oral intercourse." *Commonwealth v. Snyder*, 870 A.2d 336, 351 (Pa. Super. 2005). Statutory sexual assault is defined in pertinent part as engaging in sexual intercourse with a complainant under the age of 16 years and that person is four or more

years older than the complainant and the complainant and the person are not married to each other. 18 Pa.C.S.A. § 3122.1.

Here, the contact proscribed by § 6318 took place when Venson urged J.F. to call the minor victim to invite her to smoke marijuana and hang out. This contact was clearly initiated for the purpose of effectuating the subsequent offenses, which consisted of oral and sexual intercourse with the minor victim. While the crimes were carried out contemporaneously, such a circumstance does not require merger for sentencing purposes.

Venson's argument is premised upon the mistaken belief that the statutory sexual assault and involuntary deviate sexual intercourse must be carried out in order for the actor to have committed the unlawful contact offense. To the contrary, once an Appellant intentionally contacts or communicates with a minor, for the purpose of engaging in the prohibited activity, the crime of unlawful contact with a minor has been completed. The actual intercourse is not an element of the crime contemplated in § 6318. In other words, the actor need not be successful in completing the purpose of his or her contact or communication with the minor. Moreover, the contact/communication contemplated in § 6318 need not be made in person and can be accomplished through an agent or agency. Clearly, such is not the case with the subsequent offenses. Since each offense requires proof of an element that the other does not, the offenses do not merge. We find this issue is also without merit.

Finally, Venson argues the trial court imposed a manifestly excessive and unreasonable sentence by sentencing him at the upper end of the standard sentencing ranges for his convictions, as well as by requiring those sentences to be served consecutively. Venson concedes this claim challenges the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Venson filed a post-trial motion in which he asked the court to overturn and reconsider the sentence. He included multiple reasons for reconsideration, including that his sentence was outside the guidelines, that his sentences should have merged, that the district attorney had made false and prejudicial statements which led to his harsh sentence, that the minimum sentence is beyond the recommended sentence based on his prior record

score, and that the "unusual and extreme sentence" is due to racial bias. See Post-Trial Omnibus Motion, 1/22/2019, at 15-17.

However, in his 1925(b) statement, Venson, for the first time claims the sentence imposed was manifestly excessive and unreasonable because the trial court sentenced him at the upper end of the standard sentencing range for his convictions and imposed consecutive sentences. Then, in his Rule 2119(f) statement, he claims for the first time, that the trial court failed to put its reasons for sentencing on the record.

Venson failed to raise any of these challenges to the trial court's discretion during the sentencing hearing or in his post-sentence motion. As such, he did not give the sentencing judge an opportunity to reconsider or modify his sentence based on those specific challenges, and, therefore, the claims are waived. *See Commonwealth v. Reeves*, 778 A.2d 691, 692-693 (Pa. Super. 2001) (holding that appellant's failure to raise a specific claim regarding imposition of sentence in post-sentence motion deprived the trial court of the opportunity to consider the claim and therefore the claim was waived on appeal).

We note, even if not waived, Venson's claim lacks merit. The court adequately considered all sentencing factors and explained on the record the reason for the sentence. *See* N.T., Sentencing, 1/15/2019, at 30-32.

Further, the trial court reviewed a pre-sentence report. ***See id***. at 30. Where the trial court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Hallock***, 603 A.2d 612, 616 (Pa. Super. 1992).

Despite Venson's arguments to the contrary, the trial court properly considered all factors necessary in imposing the sentence. The trial court had the benefit of a pre-sentence report, combined with the trial court's consideration of the witness testimony. Accordingly, Venson's claim lacks merit even if it had been properly preserved.

As we find none of Venson's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/22/2020