**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELLIS WAYNE HESS | : | |
| | : | |
| Appellant | : | No. 762 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 9, 2021
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0001652-2019

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  JUNE 7, 2022**

Ellis Wayne Hess appeals from the judgment of sentence imposed following a jury verdict in which he was found guilty of two offenses: (1) engaging in unlawful contact with a minor; and (2) endangering the welfare of a child.[1] In addition to imposing the costs of prosecution and a fine, the court sentenced Hess at the former offense to one to two years of incarceration[2] and at the latter offense to a consecutive one year of probation. On appeal, Hess presents a weight of the evidence challenge, contending that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 6318(a)(1) (requiring intentional contact with a minor for the purpose of engaging in a "Chapter 31" enumerated sexual offense) and 18 Pa.C.S.A. § 4304(a)(1), respectively.

[2] Hess was also required to submit to DNA testing, obtain a sexual offender evaluation, and register as a sexual offender for twenty-five years under SORNA. **See** 42 Pa.C.S.A. § 9799.11; 42 Pa.C.S.A. § 9799.16.

the jury's verdict was incongruent, the evidence employed at trial was deficient, and the victim's testimony was inconsistent and unreliable. Further, Hess asserts that the court abused its discretion in admitting certain text messages and allowing for specific demonstrative impeachment evidence. After a thorough review of the record, we conclude that Hess has failed to establish sufficient validity to any of his issues. Consequently, we affirm.

By way of background, the victim, a minor at all points relevant to this case, moved in with Hess and his family in 2016. The following calendar year, primarily happening when she was sixteen or seventeen years of age, the victim indicated that she had been sexually assaulted by Hess on numerous occasions.

In one instance, the victim stated that she and Hess's daughter, as a game, had been placing ice cubes down each other's shirts. Hess, himself, eventually joined in this "activity". However, Hess, on another date, continued to engage in this behavior solely with the victim. When the two of them were home alone, Hess dropped ice down the front of the victim's shirt and back of her pants.

At some point, Hess escalated his interactions with the victim. Hess summarized the victim's testimony as identifying that he placed ice cubes "down her pants, beneath her underwear, against her vagina approximately twenty to thirty times. Further, [the victim] alleged … Hess forcefully zip-tied her to a coffee table while naked and inserted fingers and ice cubes into her vagina until they melted." Appellant's Brief, at 7.

Meanwhile, the Commonwealth highlights that Hess's "behavior eventually escalated to [Hess] pinning [the victim] down on the floor removing her pants, and sticking an ice cube into her vagina until the ice cube melted." Appellee's Brief, at 2. Furthermore the victim, indicated that Hess acted in this way upon her twenty to thirty times. *See id*., at 2-3. The victim would tell Hess "to stop, get off her, and say that this behavior was hurting her." *Id*., at 3. "[A]t one point, [Hess] zip-tied her to the coffee table in the living room by her wrists and ankles, while she was naked." *Id*. The victim's wrists were resultantly bruised.

The court noted that, in a separate happening, Hess "came into the bathroom with ice cubes while the [v]ictim was showering, removed her clothes and towels from the bathroom, and pinned her down on the floor." Trial Court Opinion, 8/12/21, at 4.

After one particular conversation between Hess and the victim, Hess stopped with any kind of physicality toward her. Instead, Hess transitioned to verbally communicating with her in provocative ways. For instance, he would describe sexual acts that he wanted to perform on the victim in addition to sexual dreams he would have about her.

Towards the end of 2018, the victim moved out of Hess's residence. At or around that same time period, the victim sent a text message to Hess, indicating that she no longer wished to have communication with him because of what had been happening between the two of them. The victim further indicated that she felt violated, specifically at the ice cube and zip-tie-related

events. Hess replied that he understood, felt horrible about what had happened, and acknowledged that he was supposed to have been there to protect her. Later, Hess would qualify his response by asserting that he was merely replying to what he was able to see as the end of the victim's text message, as he was busy pumping gas at the time and thought the content of the text dealt more with negative interactions between the victim and Hess's wife.

Hess's first trial resulted in a mistrial, with the court granting leave for the Commonwealth to retry the case. To that point, there were slight evidentiary distinctions between what was admitted in the first trial and what was admitted in the second. At the second trial, the one relevant to the present case, the Commonwealth introduced a text message from Hess to the victim containing what Hess has described as a "meme," Appellant's Brief, at 10, which was admitted over defense counsel's objection. Additionally, to dispel the notion that Hess, in fact, merely read the end of the victim's text message sent to him, the Commonwealth demonstrated precisely how text messages are received and displayed on a phone that was similar, if not identical, in terms of manufacturer and operating system, to the one Hess had been using throughout his communications with the victim.

While the jury was unable to reach a unanimous decision on three of the

charges,[3] it did find Hess guilty of engaging in unlawful contact with a minor[4] and endangering the welfare of a child. Following his convictions, the court sentenced Hess to an aggregate term of one to two years of incarceration to be followed by one year of probation.

Hess filed a timely post-sentence motion, which was correspondingly denied. Hess then filed a timely notice of appeal. The relevant parties have complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this matter is ripe for review.

On appeal, Hess presents three issues for review:

1. Was the verdict against the weight of the evidence where: (1) the jury's inability to reach a verdict on the charges involving predicate acts of the convicted charges resulted in inconsistent findings; (2) there was no objective or physical evidence of Hess's guilt presented at trial; and (3) the victim's testimony was inconsistent, contradictory, and unreliable?

2. Did the trial court abuse its discretion in admitting certain text messages, inclusive of a specific one advertising "Rebel's Market," where the evidence was irrelevant, more prejudicial than probative, and defense counsel was not provided with timely notice?

3. Did the trial court err in allowing demonstrative evidence regarding the way a specific type of cell phone displays text messages, as an attempt to impeach Hess's assertion that the last line of a text message appeared on his phone's display screen, given that such evidence was irrelevant, misleading,

---

[3] Those charges were sexual assault, aggravated indecent assault, and corruption of minors. **See** 18 Pa.C.S.A. § 3124.1, 18 Pa.C.S.A. § 3125(a)(1), and 18 Pa.C.S.A. § 6301(a)(1)(ii), respectively.

[4] The jury found that Hess intentionally contacted the victim "for the purpose of engaging in" aggravated indecent assault. 18 Pa.C.S.A. § 6318(a)(1).

and overly prejudicial?

*See id*., at 6.

Hess first avers that his jury verdict was against the weight of the evidence. Correspondingly, in our appraisal of such a claim, our standard of review is well-settled:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted). We further note that a weight of the evidence challenge is "[o]ne of the least assailable reasons for granting or denying a new trial." *Thompson v. City of Philadelphia*, 493 A.2d 669, 671 (Pa. 1985).

Hess has divided his weight claim into two separate points of contention: (1) a belief that because "the jury could not reach a verdict on the charges of sexual assault, aggravated indecent assault by forcible compulsion, and corruption of a minor," Appellant's Brief, at 13, but was able to find him guilty of endangering the welfare of a child and unlawful contact with a minor, it resulted in inconsistent findings; and (2) the lack of physical evidence and the inconsistent testimony of the victim militate against a guilty verdict.

As to his first point, Hess chiefly employs our Supreme Court's decision in *Commonwealth v. Reed*, 9 A.3d 1138 (Pa. 2010). Therein, the appellee was convicted of "attempted unlawful contact with a minor, pursuant to 18 Pa.C.S.[A.] § 6318, [but] … was acquitted of all other charged offenses." *Id*., at 1140. However, because "the Chapter 31 offenses are not predicate offenses [under Section] 6318[,] … a defendant need not be successful in completing the purpose of his communication with a minor in order to be found guilty[.]" *Id*., at 1146. Instead, "a defendant is guilty if he *contacts* a minor for the purpose of engaging in … prohibited behavior." *Id*. (emphasis in original) (citation omitted).

Hess latches on to the notion that because the Commonwealth, in *Reed*, attempted to secure a conviction of several Chapter 31 offenses,[5] but the jury returned acquittal as to all of those crimes, "a defendant's acquittal cannot be ignored when applying the appropriate grading of the offense." Appellant's Brief, at 14 (citing *Reed*).

*Reed* is materially distinguishable from Hess's situation. To start, Hess was *not* acquitted of any charged offenses. Instead, there was a lack of agreement from the jury as to the three counts that did not result in a guilty verdict.

---

[5] The appellee in *Reed* had been charged with criminal attempt of both rape of a child and involuntary deviate sexual intercourse (IDSI) as well as statutory sexual assault and indecent assault. *See* 9 A.3d at 1141.

More importantly, however, **Reed** was decided in the context of trying to ascertain what that appellee's appropriate sentence should be. The acquitted crimes charged in **Reed** carried wildly different sentences, with some being felonies and some being misdemeanors, all carrying different grades. "Pursuant to the express statutory language, a violation of 18 Pa.C.S.[A.] § 6318(a) is the same grade as the most serious underlying offense for which the defendant attempted contact with the minor, or a first-degree misdemeanor, whichever is greater." 9 A.3d at 1146-47. But "where [that a]ppellee was acquitted of all other charged offenses, the sentencing court had to guess which offense [a]ppellee sought to commit[.]" **Id**., at 1147. Therefore, "in light of the special weight afforded to acquittals, [our Supreme Court found] that the default grading must apply because the fact-finder specifically determined that [the a]ppellee did not commit the separately charged Chapter 31 offenses." **Id**., at 1148. Here, there is no ambiguity over the underlying Chapter 31 offense, as only one crime was checked on the verdict slip: aggravated indecent assault. **See** Verdict Slip, Count 4, 10/29/20.

Strangely, Hess appears to deviate from his legal discussion of **Reed** to state that the text messages admitted in his trial only included "a vague mention of nudity, but nothing to rise to the level of aggravated indecent

assault." Appellant's Brief, at 15.[6] And in addition, "the jury did not lend sufficient credibility to [the victim's] testimony regarding … Hess's commission of the underlying sex offenses to convict him of such offenses, and there is nothing to corroborate her testimony regarding any conversations about such acts." *Id*.[7] Hess then concludes by writing that because the jury was charged with finding that he "engaged in a sexual offense as an element of unlawful contact with a minor, and [the jury] failed to do so," *id*., at 16, his unlawful contact with a minor charge should have been vacated.

Preliminarily, we note that, while the at-issue verdict slip could have been more precise in its verbiage, allowing for clearer wording demonstrating that contact for the purpose of committing the ancillary crime is sufficient for a finding of guilt, *see* Verdict Slip, Count 4, 10/29/20 ("If you found Defendant guilty of Unlawful Contact with a Minor above, indicate which act or acts you find to have been so proven: … Aggravated Indecent Assault), the record reflects that the jury was well apprised of the statutory elements. *See, e.g.*, N.T., 10/27/20, at 122-23 ("To find the Defendant guilty of [unlawful contact

---

[6] Hess provides no explanation as to how or why the admitted messages do not rise to the level of aggravated indecent assault nor does he enumerate what would be required to find one guilty of that crime. However, as indicated, *infra*, the jury was not actually required to find Hess guilty of that offense. Rather, it just needed to find that Hess contacted the victim for that purpose; whether Hess was successful or not in committing aggravated indecent assault is immaterial in finding him guilty of unlawful contact with a minor.

[7] Hess's averments in this part of his brief appear to be more germane to the second part of his weight of the evidence claim, addressed *infra*.

with a minor] you must find … that the contact was *for the purpose* of engaging in an unlawful act, that is sexual assault or aggravated indecent assault[.]") (emphasis added); **see also Commonwealth v. Bullock**, 913 A.2d 207, 218 (Pa. 2006) (noting that jurors are presumed to follow the court's instructions).

More substantively, we reiterate that a defendant need not be convicted of the Chapter 31 offense to be guilty of unlawful contact with a minor. **See Commonwealth v. Aikens**, 168 A.3d 137, 144 (Pa. 2017) (finding there to be no inconsistent verdict where, in that case, "the jury's verdicts merely indicate[d] that [the a]ppellant did not actually commit IDSI with respect to the minor victim, but did unlawfully contact the minor victim for purposes of engaging in IDSI"). As Hess asserts a weight of the evidence claim[8] under the premise that non-finding of guilt as to aggravated indecent assault created an inconsistent verdict when he was found guilty of unlawfully contacting a minor for the purpose of committing aggravated indecent assault, such a contention is clearly repudiated by the language of **Aikens** and **Reed**. Clearly, then, the jury had the ability to find that Hess contacted the victim for the purpose of engaging in aggravated indecent assault despite it not reaching a conclusion

_____

[8] It is unclear whether Hess's inconsistent verdicts challenge is appropriately described as a weight of the evidence claim. **See Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) ("A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.") (citation omitted).

as to whether the aggravated indecent assault, in fact, occurred.[9] Therefore, Hess is entitled to no relief on this claim.

In the second component of his weight of the evidence challenge, Hess tersely asserts that his convictions were based solely upon the victim's testimony. *See* Appellant's Brief, at 17. In addition, "the factfinder failed to adequately consider the credibility of [that witness]." *Id*. Specifically, the court "determined that the [victim's] testimony deserved greater weight despite her inconsistencies in timelines provided over the investigatory process and following confrontation with … Hess." *Id*.

Conversely, Hess maintains that his statements were consistent and that the detective working on the case "failed to investigate to corroborate evidence or speak[] with persons otherwise involved in the family setting." *Id*., at 18.

The trial court's opinion, in response, is particularly apt:

The [v]ictim credibly testified[] and presented text messages she previously had with [a]ppellant as evidence thereof, that when she was a minor in the care of [a]ppellant, she trusted and confided in him and he, in turn, hid her clothing, restrained her

_____

[9] To the extent Hess claims that it "shocks one's sense of justice" to find him guilty of making unlawful contact with a minor, the record is replete with examples that the jury could have utilized in concluding that Hess contacted the victim for the purpose of engaging in aggravated indecent assault. *See, e.g.*, N.T., 8/18/20, at 105-06 (identifying, through the victim's testimony, that Hess would communicate with her, three to four times a week, saying that "he wishes that he had a chance to make [her] orgasm or that he wishes he could eat [her] out and that he no longer wishes to have sex with his wife because he's so attracted to [her]"). The jury had the right to believe or not believe any of the victim's testimony.

- 11 -

with zip-ties, assaulted her vaginally with ice cubes, sent her sexually-charged text messages, and told her about sex dreams he had about her and sexual acts he wished to perform on her. It was well within the jury's province to believe or disbelieve whatever portions of this evidence it chose. On the basis of guilty verdicts on some charges and a hung jury on others, it is apparent that the jury exercised the discernment in its purview to choose which evidence it unanimously found credible, reliable, and convincing. Cross-examination of the [v]ictim and testimony from [a]ppellant's witnesses regarding [a]ppellant's reputation in the community, money [a]ppellant owed to the [v]ictim, speculation that [v]ictim fabricated the allegations to save herself from trouble with her grandparents for getting behind on schoolwork, and [a]ppellant's declaration of innocence, evidently did not undercut the Commonwealth's ample evidence in the [v]ictim's testimony and the incriminatingly apologetic text messages from [a]ppellant. The fact that the jury evidently disbelieved [a]ppellant's testimony that he didn't read her entire message before responding was an appropriate exercise of its factfindings and which was not contrary to the evidence.

Trial Court Opinion, 8/12/21, at 11.

We see no basis to deviate from the trial court's well-reasoned conclusion and find that the verdict was not against the weight of the evidence. Moreover, other than including one citation to authority outlining, generally, what constitutes an abuse of discretion, *see* Appellant's Brief, at 17, Hess has provided no support to demonstrate that the facts of his case mandate the opposite conclusion.

To the extent Hess believes that the victim was inconsistent in her testimony, other than highlighting discrepancies in dates that she provided, he has not illuminated clear distinctions or alterations in the victim's story, over time, that have underpinned the crimes he was convicted of. Implicitly, too, Hess, in contravention of precedent, is asking for this Court to reweigh

his testimony and afford it greater weight at the expense of the victim's testimony. **See Commonwealth v. Windslowe**, 158 A.3d 698, 712 (Pa. Super. 2017 (citation omitted) (emphasizing that, because the jury is free to believe some, all, or none of the evidence presented and is to ascertain witness credibility, this Court *will not* reweigh testimony and will not substitute our judgment for that of the factfinder). Accordingly, Hess's issue warrants no relief.

In his second question raised, Hess asserts that the Commonwealth should not have been allowed to present, at trial, a certain picture that he sent via text message, given that it was more prejudicial than probative and not provided to defense counsel with reasonable notice in advance of trial. Therefore, the court's admittance of the same was in error. The complained-of text message was a picture titled "Rebels Market." Commonwealth's Ex. 5. In relevant part, that picture, which was sent from Hess to the victim, stated: "Now accepting applications for partner in crime"; "Must be fluent in smart-ass, sarcasm, and adult language."; and "Questionable morals and nudity may be required." **Id**.

As this claim raises an evidentiary issue, "[w]e review a trial court's decision to admit or deny evidence for abuse of discretion or error of law." **Commonwealth v. Leaner**, 202 A.3d 749, 777 (Pa. Super. 2019) (citation omitted). "Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or

prejudicial to the complaining party." ***Id***. (citation omitted).

Hess argues that the Commonwealth untimely furnished him with the text message at or around the morning of the second trial's first day. However, Hess indicates that "[t]he Commonwealth acknowledged that [it] had just received the message/photo and turned it over to the defense when [it] did." Appellant's Brief, at 20. Such evidence "was held in evidence with the police department." ***Id***.

Hess seems to be suggesting that the Commonwealth violated discovery rules in the timing of its disclosure of the at-issue image. We start by highlighting that "[w]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." ***Commonwealth v. Santos***, 176 A.3d 877, 883 (Pa. Super. 2017) (citation omitted).

Once the timing of this image's disclosure became known, the court gave Hess's counsel "time to inspect the messages and privately question the detective" as a way to provide a "just remedy to ensure fairness." Trial Court Opinion, 8/12/21, at 15 (listing, *inter alia,* that Hess's "counsel knew that police conducted a cell phone extraction on the [v]ictim's phone *and* that the contents thereof were on a flash drive available to be inspected by both parties, that [Hess] was a party to the text messages and would have known the text messages existed and therefore also would have had access to the

- 14 -

text messages via his own cell phone or cell phone records without the assistance of police or the Commonwealth") (emphasis in original). Hess also admits in his brief that he had access to the picture prior to receiving disclosure of the same. *See* Appellant's Brief, at 20.

Even assuming that admittance of this image was in error, other than broadly taking issue with disclosure timing, Hess does not articulate how its admission was prejudicial to him, which is necessary for reversal. Hess baldly asserts that more time would have allowed him to formulate "a proper defense," *id*., at 21, but provides nothing to demonstrate what that additional time would have allowed him to accomplish. In the absence of any clear indicia of prejudice, his claim is without merit. *See Commonwealth v. Flamer*, 53 A.3d 82, 88 (Pa. Super. 2012) (remarking that just because evidence is harmful to a defendant's case, it is not inherently unfairly prejudicial).

Conversely, the court found the image to be relevant and have probative value that exceeded any kind of attendant prejudice. *See* Pa.R.E. 402, 403. Specifically, as outlined by the court, Hess

> would tell the [v]ictim he had dreams about having sex with her, that he wanted to perform sexual acts on her, and similar, which is supported by the text messages during the relevant timeframe from [Hess] to the [v]ictim, seeking a "partner in crime" where "questionable morals and nudity may be required[.]"

Trial Court Opinion, 8/12/21, at 16-17. A corresponding series of text messages, harkening back to this image, asked the victim whether she was "game". *See id*., at 17. The court concluded that the Rebels Market picture

was "probative of material issues," *id*., because it established at least some of the elements of the crimes in which Hess had been charged. For example, Hess's "propositioning of the [v]ictim to be his nude 'partner in crime' … was itself contact for the purpose of engaging in sexual activity, which is … part of a requisite element of [u]nlawful [c]ontact with a [m]inor." ***Id***. As such, the court did not err by admitting the Rebels Market image.

In his final claim, Hess states that the court abused its discretion when it allowed the Commonwealth to "demonstrate text messaging … as a means of impeachment against [him]." Appellant's Brief, at 22. Hess refers to the situation where the victim sent a lengthy text message, which conveyed her feelings and described Hess's actions, and Hess responded by saying that he understood, felt horrible, and that he should have been there to protect her. When being interviewed by detectives, Hess claimed that, because he was pumping gas at the time, he had only read a portion of the text message as had been displayed on his screen. At trial, too, he stated that he had only read the end of the text message, as that is what his phone's lock screen displayed. When the demonstrative evidence was presented at trial with a Samsung cell phone running the Android operating system,[10] it was, in fact, the first line of the message that was displayed on the lock screen.

Hess believes that the Commonwealth should not have been able to

---

[10] Hess's phone, too, was a Samsung phone utilizing the Android system.

"present[] demonstrative evidence utilizing an unknown phone to demonstrate how a text could potentially be read to impeach [Hess] during cross-examination." *Id.*, at 23. Stated differently, the Commonwealth "failed to provide sufficient evidence that [the phone used at trial] was the same phone with the same operating system that … Hess had at the time of the alleged incidents and that the phone … did not have a screen locking mechanism in place[.]" *Id*. Consequently, the demonstration "was so prejudicial that it inflamed the jury to make a decision on … Hess's credibility upon something other than the legal propositions relevant to the case." *Id*., at 23-24.

A court is permitted to "admit demonstrative evidence whose relevance outweighs any potential prejudicial effect." ***Commonwealth v. Serge***, 837 A.2d 1255, 1261 (Pa. Super. 2003). Other than vague statements about "inflaming the jury," Hess, again, fails to demonstrate how admission of this cell phone evidence served to specifically prejudice him.

While there may be some merit to the assertion that Hess's phone could have been a different model than the one utilized at trial or that his phone ran on a different version of the same operating system, a fact the jury was apprised of, the court found that "the possible prejudice and any risk of misleading the jury was outweighed by the probative value of demonstrating for the jury how a similar phone of the same brand and operating system displays text messages[.]" Trial Court Opinion, 8/12/21, at 19. Specifically

enumerated by the court, the evidence helped to show what a "displayed message" looked like on a locked cell phone and, further, the evidence assisted in ascertaining Hess's credibility in what he was able to view when he received a text message. *See id*. The court additionally noted that Hess was not foreclosed from attacking the weight of this demonstrative evidence and, in fact, after that evidence was presented, Hess continued to indicate that his phone, specifically, displayed the last line of text messages. *See id*., at 19-20.

Based on the trial court's analysis, which determined that the probative value of admitting this demonstrative evidence outweighed any prejudice Hess would incur, we conclude that such a ruling does not constitute an abuse of discretion. Clearly, in this series of text messages, the back and forth between the victim and Hess was relevant to several trial-relevant issues and the offenses in which he was charged, such as the victim outlining the sexual acts he had been performing on her and his seeming acknowledgment to having perpetrated the same. By allowing demonstrative evidence, it assisted the trier of fact in providing some level of clarity to the situation in which Hess contended he was not able to see the message he was responding to in its entirety.

As none of Hess's claims raised in this appeal warrant relief, we are constrained to affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/07/2022