**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIO NAZEIO | : | |
| | : | |
| Appellant | : | No. 1910 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 18, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003018-2016.

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                 **FILED NOVEMBER 15, 2022**

Mario Nazeio (a/k/a Mario Nazario)[1] appeals from the judgment of sentence entered following his conviction for unlawful contact with a minor, endangering the welfare of a child, and corruption of minors.  We affirm.

Around 2:30 a.m. on March 5, 2016, Abigail Agin arrived home with her boyfriend Danny Borges.  Agin had previously arranged for her five-year-old daughter A.R. to be home under the care of Agin's sister Jessica Pagan (A.R.'s aunt), who lived there with her husband Nazeio (A.R.'s uncle).  Agin went upstairs to the living room area, where she saw Nazeio lying on the couch licking A.R.'s vagina.  A.R.'s pants and underwear were at her ankles, and

---

[1] Nazeio first filed a notice of appeal with the spelling in parentheses, and then, per this Court's *per curiam* order, an amended notice of appeal with the spelling from the trial court caption.  **See** Pa.R.A.P. 904(b)(1) ("The parties shall be stated in the caption as they appeared on the record of the trial court at the time the appeal was taken.").

Nazeio was in his underwear. Agin screamed and hit Nazeio, which prompted Borges to enter the room and hit Nazeio once Agin said what she saw. Agin woke up Jessica Pagan, who asked Nazeio what he did. He said he did not know. Agin promptly called the police, who arrested and charged Nazeio.

At 4:44 a.m., A.R. participated in an interview with Carolina Castano of the Philadelphia Children's Alliance. A.R. said that Nazeio played a game in which he licked her "cookie," meaning her vagina. She told Castano that he licked her on her panties, not on her skin.

At 9:50 a.m., A.R. underwent a physical examination that included collecting swabs from her vagina. Benjamin Levin, an expert in forensic DNA analysis, compared the swabs to samples from A.R. and Nazeio. He prepared a two-page DNA laboratory report concluding: "The DNA detected in samples 53675 and 53676 is consistent with originating from [A.R.] Mario Nazario is excluded as a source of the DNA detected in these samples." Exhibit C-17a.

After two mistrials, the case proceeded to a jury trial in February 2020. The testimony was consistent with the above history. A.R., age nine at trial, testified that Nazeio asked her, "Do you want to play a game," pulled down her pants and underwear, and licked her "cookie." She confirmed that he licked her skin, not her panties, and that her statement to Castano that he licked her panties was not true.

During trial, Levin testified as an expert in the field of forensic DNA analysis. Over objection, he explained that a negative result could be caused

by the absence of DNA or by an insufficient amount of DNA, and that on a mucus membrane like the vagina, foreign DNA diminishes over time.

The jury found Nazeio guilty of unlawful contact with a minor, endangering the welfare of a child, and corruption of minors. The jury found him not guilty of involuntary deviate sexual intercourse. On September 18, 2020, the trial court sentenced Nazeio to an aggregate term of 8 to 20 years of incarceration followed by 5 years of probation. Nazeio did not file post-sentence motions.

Nazeio timely appealed. Nazeio and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Nazeio presents three issues for review:

I.    Did the trial court err when it permitted a DNA expert to give testimony that was beyond his expertise and not contained in his expert report?

II.   Was the evidence insufficient to convict Mr. Nazeio on all charges?

III.  Was the jury's guilty verdict against the weight of the evidence?

Nazeio's Brief at 7.

## I.    Expert Testimony

Nazeio's first argues that the trial court abused its discretion by permitting Levin to testify beyond his expertise and beyond the scope of his expert report. On direct examination, after testifying that Nazeio's DNA was not on A.R.'s vaginal swabs, Levin described how foreign DNA in a mucus

membrane (like a vagina) naturally dissipates over time. He likened it to how immediately after eating a blueberry Popsicle, one's mouth is blue, and over time, the amount of color goes away.

Nazeio presents two issues with Levin's testimony, which we will address in turn. First, Nazeio argues that any testimony about collecting DNA samples was beyond the scope of expertise of Levin, who had only worked in analyzing samples that were already collected. Second, he challenges the admission of testimony beyond the expert report, which concluded only that Nazeio was excluded as a source of the DNA from A.R.'s vaginal swabs.

Expert testimony is admissible if a qualified "expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson" and will help the jury "to understand the evidence or to determine a fact in issue" and if "the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702.

> The admission of expert testimony is a matter of discretion for the trial court, and will not be disturbed absent an abuse of discretion. *Commonwealth v. Walker*, 92 A.3d 766, 772 (Pa. 2014). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* at 772–73.
>
> Expert testimony is admissible in all cases, civil and criminal alike, "when it involves explanations and inferences not within the range of ordinary training knowledge, intelligence and experience." *Id.* at 788. Even where an expert's testimony arguably went beyond the scope of his or her report, the defendant still bears the burden of proving he suffered prejudice from the admission of the testimony. *See Commonwealth v. Henry*, 706 A.2d 313, 326–27 (Pa. 1997).

- 4 -

*Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015).

Regarding the scope of expertise, our Supreme Court has "recognized that the standard for qualifying as an expert is a liberal one and the witness need only have 'any reasonable pretension to specialized knowledge on the subject matter under investigation' and the weight to be given to the expert's testimony is for the factfinder." *Commonwealth v. Jones*, 240 A.3d 881, 890 (Pa. 2020) (quoting *Commonwealth v. Gonzalez*, 546 A.2d 26, 31 (Pa. 1988)) (quotation marks omitted). For example, even if an expert witness does not have practical experience administering tests, this does not preclude testimony about those tests based on knowledge from other sources; the fact finder can consider the lack of experience in weighing the expert's opinion. *Commonwealth v. Taylor*, 209 A.3d 444, 450 (Pa. Super. 2019) (finding reversible error to exclude testimony about validity of field sobriety tests from a scholar who had not given those tests himself).

Here, the parties stipulated that Levin was an expert in the field of forensic DNA analysis. Levin's expert qualifications included working as a forensic scientist for 16 years, preforming over a thousand DNA analyses, and being involved in validation and training for new techniques and technologies.[2] Trial Court Opinion, 8/20/21, at 14. This provided a "reasonable pretention

---

[2] The trial court permitted limited testimony about Levin's qualifications based on the stipulation as to his expertise. N.T., Trial Vol. II, 2/21/20, at 56. On cross-examination, Levin noted that in his continuing education, he read about "not just the DNA itself but also the origin of DNA from different tissues, from different surfaces, different materials." *Id.* at 71.

to specialized knowledge" about the likelihood that DNA would be found on a surface, including reasons that it could diminish and would not be detected in a sample. **Jones**, **supra**. As in **Taylor**, any deficiency in Levin's opinion from his lack of experience collecting samples himself was properly before the finder of fact and went to the weight, not the admissibility, of the testimony. As such, the trial court did not abuse its discretion in overruling Nazeio's objections based on the scope of Levin's expertise.

Relatedly, Nazeio contends that Levin testified beyond the scope of his report. Levin's report concluded that Nazeio was excluded as a source of the DNA samples from A.R.'s vagina. His testimony described the meaning of that conclusion and possible causes: either Nazeio's DNA was not there, or there was not enough of it there when the samples were taken. Levin also testified that the likelihood that foreign DNA will be found on a mucus membrane decreases over time. Nazeio asserts that the trial court's rulings caught counsel "by complete surprise."[3]

We need not decide whether Levin's testimony about the dissipation of foreign DNA in a mucus membrane exceeded the scope of his report, however, because even if it did, we find no prejudice under the facts of this case. The jury acquitted Nazeio of involuntary deviate sexual intercourse, the only

---

[3] This overlooks the trial court's identical rulings when the same issues arose at Nazeio's first trial. **See** N.T., Jury Trial Vol. I, 12/14/17, at 120–147. The Commonwealth apparently shared Nazeio's surprise by arguing in closing that "I don't think me or the defense were anticipating" Levin's testimony about insufficient quantities of DNA. N.T., Jury Trial, 2/24/20, at 30.

offense that required the Commonwealth to prove that Nazeio's tongue touched A.R.'s skin. Levin's testimony was not relevant to whether Nazeio's tongue touched A.R.'s panties, which were not tested for DNA. Therefore, Nazeio has failed to prove that he was prejudiced by the admission of Levin's testimony beyond his report.[4] **Poplawski**, 130 A.3d at 718. Nazeio's first claim fails.

## II. Sufficiency of the Evidence

Nazeio next argues that the evidence was insufficient to convict him of unlawful contact with a minor, 18 Pa.C.S.A. § 6318(a), because the Commonwealth did not prove that he committed involuntary deviate sexual intercourse. Nazeio's Brief at 28–30 (unnumbered). Because the jury acquitted him of involuntary deviate sexual intercourse, Nazeio claims that he could not be convicted of contacting A.R. for the purpose of engaging in involuntary deviate sexual intercourse. **Id.** (citing **Commonwealth v. Reed**, 9 A.3d 1138 (Pa. 2010)).

As a preliminary matter, this claim is waived. Nazeio failed to assert this claim in his Rule 1925(b) statement. There, he generally alleged, "The evidence was insufficient as a matter of law to convict Appellant of any

---

[4] In this vein, we agree with the Commonwealth that any error would have been harmless. **See generally Commonwealth v. Holt**, 273 A.3d 514, 540 (Pa. 2022) (citing **Commonwealth v. Story**, 383 A.2d 155, 162 (Pa. 1978)) (explaining that the Commonwealth proves harmless error if the error did not contribute to the verdict, as when there is no prejudice); **Commonwealth v. Green**, 162 A.3d 509, 522 (Pa. Super. 2017) (finding de minimis prejudice from evidence based on an acquittal of charges supported by that evidence).

charges." Based on Nazeio's blanket claim of insufficiency, the trial court did not address whether the Commonwealth had proven every element of unlawful contact with a minor. *See* Trial Court Opinion, 8/20/21, at 20–22 (relying on closing arguments to guess which elements of which offenses Nazeio would challenge on appeal). Therefore, Nazeio waived his sufficiency challenge. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1105–07 (Pa. Super. 2020).

If Nazeio had preserved this claim, it would still fail. To sustain a conviction for unlawful contact with a minor, the Commonwealth must prove that the defendant intentionally contacted a minor "for the purpose of engaging in" a prohibited activity, not that he committed that activity. 18 Pa.C.S.A. § 6318(a). Our Supreme Court emphasized that the underlying sexual offense is not a predicate offense of unlawful contact with a minor. *Reed*, 9 A.3d at 1146. "In other words, a defendant need not be successful in completing the purpose of his communication with a minor in order to be found guilty of [unlawful contact with a minor]." *Id.* Here, in prosecuting the unlawful contact with a minor charge, the Commonwealth was not required to prove that Nazeio committed the completed offense of involuntary deviate sexual intercourse.

Furthermore, Nazeio's unlawful contact with a minor conviction was properly graded as a felony of the first degree. If the trial court properly instructs the jury—to convict the defendant of unlawful contact with a minor, you must find beyond a reasonable doubt that the contact was for the purpose

of engaging in involuntary deviate sexual intercourse—then the conviction for unlawful contact with a minor is graded as a felony of the first degree, even if the jury acquits the defendant of the underlying offense. ***Commonwealth v. Aikens***, 168 A.3d 137, 143–44 (Pa. 2017) (distinguishing ***Reed***). Here, the trial court properly instructed the jury. ***See*** N.T., Trial, 2/24/20, at 61–62. Therefore, there is no defect in Nazeio's conviction for unlawful contact with a minor, graded as a felony of the first degree. This claim fails.

### III.  Weight of the Evidence

Last, Nazeio challenges the jury's verdict as being against the weight of the evidence. He emphasizes inconsistencies between A.R.'s statements to Castano and her testimony at trial, as well as the negative DNA test result. Specifically, A.R. said in her interview with Castano that Nazeio licked her panties and at trial that he licked her "cookie." As addressed above, Nazeio was excluded as a source of the DNA detected in the two swabs taken from A.R.'s vagina. Critically, Nazeio did not raise this issue prior to sentencing.

> As an initial matter, a challenge to the weight of the evidence must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607(A)(1)–(3). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Comment to Pa.R.Crim.P. 607. If an appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review.

***Commonwealth v. Mbewe***, 203 A.3d 983, 988 (Pa. Super. 2019) (quoting ***Commonwealth v. Jones***, 191 A.3d 830, 834–35 (Pa. Super. 2018)). Under

Rule 607, an appellant in a criminal case cannot preserve a weight claim by raising it for the first time in a Rule 1925(b) statement, even if the trial court addresses the merits of the claim in its Rule 1925(a) opinion. ***See In re J.B.***, 106 A.3d 76, 96–98 (Pa. 2014) (tracing the Rule's promulgation in response to ***Commonwealth v. Widmer***, 689 A.2d 211 (Pa. 1997)).

Prior to filing his notice of appeal, Nazeio never gave the trial court the opportunity to rule on whether he should get a new trial based on the weight of the evidence. Nazeio's written motion for extraordinary relief did not address the weight of the evidence.[5] Nazeio did not file a post-sentence motion. The first time he asked the court to review the weight of the evidence was in his Rule 1925(b) statement. Accordingly, Nazeio has waived this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2022

---

[5] Even if Nazeio had raised this issue in his motion, it would still be waived; a motion for extraordinary relief has no effect on issue preservation. Pa.R.Crim.P. 704(B)(3).